IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE PIFER, | ) | |
| Plaintiffs, | ) | 2:13-cv-00452 |
| v. | ) | |
| | ) | Judge Mark R. Hornak |
| MYZAK HYDRAULICS, INC. ET AL, | ) | |
| Defendants. | ) | |

*******************************************

| | | |
|---|---|---|
| CHERYL HOUPT, | ) | |
| Plaintiffs, | ) | 2:13-cv-00559 |
| v. | ) | Judge Mark R. Hornak |
| MYZAK HYDRAULICS, INC. ET AL, | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiffs Christine Pifer and Cheryl Houpt were employees of Myzak Hydraulics, Inc., whose President and CEO was Joseph Myzak. No. 13-452,[1] ECF Nos. 24, at ¶¶ 1, 11; 26, at ¶¶ 1, 11. No later than September of 2012, both Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") and requested that the charges be dual filed with the Pennsylvania Human Relations Commission ("PHRC"). ECF Nos. 97-3; 97-4. The EEOC issued both Plaintiffs right to sue letters on March 6, 2013. ECF Nos. 24, at ¶ 43; 26, at ¶ 42. Ms. Pifer filed suit in federal court on March 26, 2013, and Ms. Houpt sued on April 18, 2013. ECF No. 1; 13-559, ECF No. 1. The Amended Complaints in both cases allege Title VII claims

---

[1] All further "ECF" citations will refer to Case No. 13-452 unless otherwise noted.

of sexual harassment and hostile work environment and Pennsylvania Human Relations Act ("PHRA") claims against Defendant Myzak Hydraulics, Inc., and state tort claims of intentional infliction of emotional distress (IIED), battery, assault, and negligence against Mr. Myzak personally. ECF Nos. 24, at ¶¶ 42–55; 26, at ¶¶ 41–54. This Court previously consolidated Ms. Pifer's and Ms. Houpt's actions for discovery purposes. Text Order dated June 11, 2013; No. 13-559, ECF No. 13.

Now before the Court is Defendants Myzak Hydraulics, Inc. and Joseph Myzak's Motion for Partial Summary Judgment as to Plaintiffs' claims under the PHRA, intentional infliction of emotional distress IIED claims, and negligence claims. ECF No. 94. For the reasons that follow, the Motions are granted in part and denied in part. The Court also requested briefing on whether the actions should remain consolidated for trial and concludes that they should.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and [ ] the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A party must support his position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). If that burden is met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," otherwise the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 (e)).

In reviewing the record, the Court must "draw all reasonable inferences in favor of the nonmoving party." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita*, 475 U.S. at 587–88. It is not the Court's role to weigh disputed evidence, and the Court does not make credibility determinations. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986); *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). "Where the defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to his case." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 589 (3d Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 323–24).

Defendants have moved for summary judgment on Plaintiffs' claims under the PHRA, their IIED claims, and as to their state law negligence claims. ECF No. 94. Also before the Court is the question of consolidation of these cases for trial. The Court will address each matter in turn.

### A. Pennsylvania Human Relations Act

Defendants do not contest Plaintiffs' PHRA claims on substantive grounds but rather contend that both Plaintiffs failed to exhaust their state law administrative remedies because they did not file claims with the PHRC as mandated by law prior to bringing lawsuits in federal court. *See* ECF No. 95, at 4–5. With regard to Plaintiff Pifer, Defendants argue that the only evidence of a PHRC claim obtained through discovery is a letter dated November 25, 2013 dismissing her PHRA claim once she filed suit. ECF No. 97-9, at 5. With regard to Plaintiff Houpt, Defendants argue that the PHRC had no record that she filed a claim at all, let alone within the requisite 180-day period. ECF No. 97-10. Importantly, however, Defendants admit that "[b]oth Plaintiffs filed charges with the EEOC, and asked that the charge be dual filed with the PHRC." *Id.* at 1.

In response, Plaintiffs argue that they did everything within their power to file their PHRA claims—they filed with the EEOC and requested dual filing under the "workshare" agreement between the EEOC and PHRC,[2] and provided for the Court's review numerous communications from their attorney to both agencies and the EEOC to the PHRC requesting that the charges be filed with both, ECF Nos. 100-1, at 6, 9, 10, 12, 25, 28, 30, 35, in addition to a verified statement of their attorney that he did in fact request dual filing on his clients' behalf, *Id.* at 3, ¶ 10.[3]

Failing to file a timely administrative complaint with the PHRC precludes judicial remedies under the PHRA, and whether a charge was filed under the PHRA is a matter of state law. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir.1997). Plaintiffs cannot rely solely on the existence of the work-share agreement between the PHRC and EEOC to demonstrate dual filing in and of itself but must show a request to dual file within the 180-period. *Hatten v. Bay Valley Foods, LLC*, No. 11-1122, 2012 WL 1328287, at *3 (W.D. Pa. Apr. 17, 2012); *Seybert v. Int'l Grp. Inc.*, No. 07-3333, 2009 WL 722291, at * 17 (E.D. Pa. March 18, 2009); *see also Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 536–39 (W.D.Pa. 2010) (holding a PHRA

---

[2] Indeed, Defendants' Appendix contains both Plaintiffs' charges as filed with the EEOC, and both documents state "I want this charge filed with both the EEOC and the State of local agency." ECF Nos. 97-3, at 2, 3; 97-4, at 2, 3.

[3] For the reasons set out below, the Court need not address whether or in what circumstances it is appropriate to consider such a declaration from trial counsel, given that it would appear to make him a fact witness on a non-ministerial, material, contested matter. *See* Pa. R. Prof. Conduct 3.7. Defendants argue the Court should not consider any of these documents because they "are not part of the record, [were] not produced by the EEOC or the PHRC, [do] not constitute admissible evidence, and [are] immaterial . . . [and were] not included with Plaintiffs' initial disclosures and not produced during the discovery phase." *E.g.*, ECF No. 105, at ¶ 22. The Defendants do not say how or why documents that now appear to be quite germane to an issue that the Defendants say is pretty important are "immaterial," nor how or why Plaintiffs were obligated to produce them in discovery or in initial or supplemental disclosures, nor why they are not authentic or admissible, nor how or why the Defendants are now prejudiced by the Court's considering them. However, the Court need not untangle those knots to resolve this issue. Using only the documents attached to Defendants' own Motion, the Court can conclude that Plaintiffs' charges filed with the EEOC contain requests to dual file. ECF Nos. 97-3, 97-4. The Third Circuit has intimated that the situation presented, where a plaintiff indicates she wishes to cross file and yet one agency fails to transmit it to the other, "would be quite different" from the cases where no such indication is made, suggesting the result would be a finding of exhaustion of remedies in such a scenario. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 926 n.12 (3d Cir. 1997). Since that is the situation that seems to have occurred with respect to Ms. Houpt, the Court concludes that her PHRC administrative remedies should be deemed exhausted.

charge of discrimination was untimely where no election to dual file was indicated within the 180–day statutory period). Under Pennsylvania law, however, a discrimination charge forwarded by the EEOC to the PHRC pursuant to the work-share agreement between the two agencies satisfies the PHRA's filing requirements. *Woodson*, 109 F.3d at 926 n.12; *Lukus v. Westinghouse Elec. Corp.*, 419 A.2d 431, 452 (Pa. Super. 1980).

Some courts have held that a charge initially filed with the EEOC is not deemed filed with the PHRC until the date of *transmittal* of the charge to the PHRC or the date the charge is *actually received* by the PHRC. *See, e.g., Zahavi v. PNC Fin. Servs. Group, Inc.*, No. 07-376, 2007 WL 3053090, at *4 (W.D. Pa. Oct.18, 2007); *Lantz v. Hosp. of Univ. of Pa.*, No. 96-2671, 1996 WL 442795, at *3 (E.D. Pa. July 30, 1996); *Barb v. Miles, Inc.*, 861 F. Supp. 356, 361 (W.D. Pa. 1994). Other courts have held that the charge is deemed filed under the PHRA on the date it was filed with the EEOC if the Plaintiff represented that she wished to dual file. *See, e.g., Yeager*, 698 F. Supp. 2d at 537–39; *Grigsby v. Pratt & Whitney Amercon, Inc.*, No. 07-0785, 2008 WL 2156355, at *5 (M.D. Pa. May 21, 2008); *Shaver v. Corry Hiebert Corp.*, 936 F. Supp. 313, 318 (W.D. Pa. 1996).

The Court's review of the record reveals that both Ms. Houpt and Ms. Pifer took the necessary and logical steps required to dual file their claims with both the EEOC and the PHRC. Indeed, even Defendants concede that the Plaintiffs "asked that the charge be dual filed with the PHRC" when they filed with the EEOC. ECF No. 95, at 1. There is no record evidence that they took any actions to sidestep the PHRC's processes, or to frustrate that agency's administrative consideration of these matters. To require more would in the Court's estimation result in an obligation for a "belt and suspenders" filing approach that would not only elevate form over substance, but form over form, likely engendering confusion in the administrative record by a

multiplicity of administrative filings made not out of necessity, but only from an abundance of caution. Rather than furthering the timely disposition of such matters at the administrative level, imposing such a requirement would impede achieving that goal by interposing redundant "just in case someone loses the paperwork" administrative filings. Because this Court concludes that "requiring claimants to file their charge with both agencies, or to place the risk on claimants of the EEOC not transmitting the charge to the PHRC before the 180–day deadline, renders the cross-filing aspect of the work-sharing agreement meaningless," *Zielinski v. Whitehall Manor, Inc.*, 899 F. Supp. 2d 344, 353 (E.D. Pa. 2012), the Court also concludes that both Plaintiffs sufficiently exhausted their PHRC administrative remedies. Therefore, Defendants' Motion for Summary Judgment as to those claims is denied.

### B. Intentional Infliction of Emotional Distress

Mr. Myzak has also moved for summary judgment in his individual capacity on Plaintiffs' IIED claims. He argues that those claims are barred by the Workers' Compensation Act ("WCA"), or alternatively, that they fail as a matter of law because Plaintiffs' evidence does not reach the high standard necessary to establish the tort in Pennsylvania. ECF No. 95, at 5–7.

Plaintiffs assert their IIED claims against Mr. Myzak personally, rather than against their former employer, Myzak Hydraulics, Inc. Moreover, the record reflects that Mr. Myzak worked in the same office with Plaintiffs, meaning that he could be viewed as an employee for WCA purposes despite also owning the company. *See Vosburg v. Connolly*, 591 A.2d 1128, 1133 (Pa. Super. 1991) (defining the co-owner of a company as an "employee" for purposes of § 72 of the WCA); *Kinnally v. Bell of Pennsylvania*, 748 F. Supp. 1136, 1144 (E.D. Pa. 1990) (holding IIED claims against employer barred under WCA but recognizing that § 72 contemplated liability against fellow employees "for intentional wrong" (quoting *Barber v. Pittsburgh Corning Corp.*,

555 A.2d 766, 770–71 (Pa. 1989))). Reviewing the record in the light most favorable to the Plaintiffs, the Court cannot at this juncture conclude as a matter of law that Mr. Myzak was not a co-employee of the Plaintiffs rather than their "employer" for WCA purposes, and the Court concludes that Plaintiffs' IIED claims cannot be deemed barred under § 72 of the WCA at this stage of the proceedings. The Defendant Mr. Myzak may raise this immunity defense at the conclusion of the evidence at trial, and if he does, the Court will then reconsider this issue in the context of the actual record developed at trial.

Since the Court cannot conclude on the record now before it that the WCA bars Plaintiffs' IIED claims, the Court must also determine whether those claims may support an IIED claim as a matter of law. *Cox v. Keystone Carbon Co.*, 861 F. 2d 390, 395 (3d Cir. 1988). Ms. Houpt's specific allegations of intentional infliction of emotional distress stem from claims that Mr. Myzak smacked her backside, forcibly hugged her, forcibly rubbed his chest against hers while making sexually-charged comments, pulled her into his lap, and lifted her onto a bar and drank liquor from her midriff in a "navel shot". ECF No. 26, at ¶ 26.[4] Ms. Pifer's allegations arise from claims that Mr. Myzak grabbed her, attempted to kiss her, forcibly hugged her, lifted her shirt, drove her to a motel and implored her to have sexual relations with him, and pulled her pants down. ECF No. 24, at ¶ 28. Both women also allege that his pervasive

---

[4] Support for each of these claims in the form of deposition testimony is also present in Plaintiffs' Appendix in opposition to Defendants' Motion for Summary Judgment. ECF No. 100. Because they are the non-moving parties, Plaintiffs' testimony must be credited at this stage, even though their basest allegations are either outright denied or at least hotly contested as to the "who, what, when, where and why" by the Defendants and their witnesses. For instance this is particularly so as to how Ms. Houpt arrived up on the bar for the rendition of the "navel shot" that appears to have happened at a post-work outing to the "Tiki Bar." She claims that she was hoisted up by Mr. Myzak wholly against her will, and that he then pulled up her blouse and slurped a shot of vodka from her belly. *See* ECF No. 100-2 at 49; Mr. Myzak denies that recitation of events, and Defendants say that there are a plethora of witnesses who can testify that Ms. Houpt issued the "navel shot" invitation from across the bar to Mr. Myzak in front of 200 people, then hopped up on the bar with great relish, quite on her own, and pulled up her blouse so that Mr. Myzak could execute that maneuver. *See* ECF No. 107-1 at 14.

7

sexually-oriented, lewd comments serve as an additional basis for IIED liability. ECF No. 98, at 12.

The Third Circuit has described Pennsylvania's standard with regard to such claims as follows:

> [T]he Pennsylvania Superior Court has recognized the cause of action and has held that, "in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff." *Swisher v. Pitz,* 868 A.2d 1228, 1230 (Pa.Super.Ct.2005) (discussing how the Pennsylvania Supreme Court has indicated that, were it to recognize a cause of action for intentional infliction of emotional distress, these would be the requirements necessary for a plaintiff to prevail on such a claim). In addition, "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Id.* Liability on an intentional infliction of emotional distress claim "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Field v. Phila. Elec. Co.,* 388 Pa.Super. 400, 565 A.2d 1170, 1184 (1989).

*Reedy v. Evanson,* 615 F.3d 197, 231–32 (3d Cir. 2010). Examples of sufficiently egregious conduct, as characterized by the Pennsylvania Supreme Court, include a defendant hitting a plaintiff's son with a car and killing him, then burying his body in a field where the body was not discovered for two months, *Papieves v. Lawrence,* 263 A.2d 118 (1970), a defendant framing a plaintiff for homicide by fabricating records, *Banyas v. Lower Bucks Hospital,* 437 A.2d 1236 (Pa. Super. 1981), and a defendant reporting to the press that plaintiff suffered from a fatal disease when the defendant, a team physician, knew the information was false, *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir.1979). *Kasper v. Cnty. of Bucks,* 514 F. App'x 210, 217 (3d Cir. 2013) (citing *Hoy v. Angelone,* 720 A.2d 745, 754 (Pa. 1998)).

Specifically within the employment context, other courts have declined to grant summary judgment when sexual harassment is coupled with some "plus factor," such as retaliation against a plaintiff for refusing to engage in sexual relations. *E.g., Hare v. H&R Indus., Inc.,* 67 F. App'x

8

114, 120–21 (3d Cir. 2003) (affirming the district court's holding of IIED liability when plaintiff's supervisors were directly responsible for some of the harassment, encouraged the hostile environment, and terminated Plaintiff in retaliation). At least some courts have held summary judgment inappropriate when the conduct at issue involved suggestive comments, inappropriate touching, and some "alter[ing of] the terms and conditions of [a plaintiff's] employment." *Barb v. Miles, Inc.*, 861 F. Supp. 356, 361 (W.D. Pa. 1994).

The plain import of these and other IIED cases applying Pennsylvania is that the bar for the assertion of such a claim is quite high, covering only the most extraordinarily extreme intentional conduct. *Hoy v. Angelone*, 720 Pa. 745 (Pa. 1998). However, even if one were to assume that pulling a subordinate co-worker's pants down, or blouse up, against her will, layered with all of the other directly physical, sexual behavior outlined above, while horrendous conduct is not the same as striking and killing someone with a vehicle and then hiding the body, that does not end the inquiry. The Court simply cannot conclude at this juncture, as a matter of law, that the conduct alleged and reflected in the summary judgment record does not or cannot rise to a level of behavior "so outrageous in character" that it is "utterly intolerable in a civilized community." Reedy, 615 F.3d at 231–32 (internal quotation marks omitted).5

While a sister court has noted that the loss of a job, which was "unfortunate" and is something that "unquestionably causes hardship," was not enough to make out an IIED claim, *Capresecco v. Jenkintown Borough*, 261 F. Supp. 2d 319, 323 (E.D. Pa. 2003), the allegations here are far more than that. They involve unwelcome conduct that at least by 21st century standards would be thought of as being wholly intolerable in any American workplace. *Compare McComb v. Morgan Stanley & Co.*, No. 07-1049, 2007 WL 4150786, *8, 9 (W.D. Pa. Nov. 19,

---

[5] *See Hoy v. Angelone*, 720 A.2d 745, 754-55 (Pa. 1998)( retaliation not a mandatory element of IIED claim; no viable IIED claim in a case involving sexual propositions, contact with the back of the plaintiff's knee, off-color jokes and regular use of profanity, and posting of sexually suggestive picture)

9

2007)(IIED claim based on disclosure to co-workers of plaintiff's personal medical information fails). While the Court gives no countenance to persistent, unwelcome, lewd, sexually-centered workplace commentary or remarks, if that were all that there were here, the conclusion would be that the high IIED bar set by Pennsylvania law had not been met, for the reasons explained by the Pennsylvania Supreme Court in *Hoy*.

But the allegations in this case are not only that. They also involve the alleged forced removal or displacement of clothing in a way that would implicate core privacy concerns, along with allegations of efforts to coerce sexual relations and pervasive physical contact of a highly sexual nature. While it is true that other courts have allowed similar claims to proceed in the employment discrimination context seemingly only when there has been some claim of added retaliation (sexual harassment "plus"), when Plaintiffs allege, as they do here, that they were forced to leave their employment as a result of Mr. Myzak's sexually-charged, directly physical behavior, the Court is constrained to conclude that such a combination would fulfill any arguable need for a "plus" factor. ECF Nos. 24, at ¶¶ 38–39; 26, at ¶¶ 36–37. Thus, as to whether the conduct alleged could rise to the level of fulfilling the IIED test, the Court concludes that it could in the context of all of the record evidence, giving all reasonable and plausible inferences to the Plaintiffs, and the Motion for Summary Judgment on such grounds is denied.[6] That said, as to these IIED claims, the Defendant Mr. Myzak may renew this Motion on such grounds pursuant to Fed. R. Civ. P. 50, based on the evidence that is presented at trial.

---

[6] Given the exacting standard for the existence of this tort under Pennsylvania law, this is a close call, notwithstanding the assertions made by the Plaintiffs. In this regard, and particularly in light of the grossly divergent testimony from the Plaintiffs and the Defendants on whether any of the alleged sexually-oriented conduct occurred, or if it did, who initiated it and/or in what context, the Court will consider directing counsel to not refer to the tort of IIED by name to the jury until all of the evidence is in, and if in the context of all of the evidence, the Court concludes that the requisite level of outrageous conduct has been presented by competent evidence, then and only then would counsel be permitted argue for the application of the IIED theory of recovery. Long story short, the Plaintiffs' claims for IIED may or may not ultimately make it to the jury. At this point, the Court cannot say that they won't as a matter of law.

10

But there's more.

Despite the Court's conclusion that it cannot at this time hold the substance of the Plaintiffs' IIED claims legally insufficient as a matter of law, the record is not yet adequately developed regarding as to whether Plaintiffs can or will provide competent evidence of physical harm, a necessary element of IIED as required under Pennsylvania law. *Reedy*, 615 F.3d at 231. At oral argument on the Defendant Mr. Myzak's Motion, Plaintiffs' counsel said that he could proffer admissible evidence of this necessary element as to Ms. Pifer, but not as to Ms. Houpt. Unless that record evidence can be advanced, it is plain that any IIED claim by Ms. Houpt can go no further, and as to Ms. Pifer, the Plaintiffs must proffer such evidence to the Court and the Defendants before trial, since if it does not make the grade, the IIED claims for both Plaintiffs will drop out of the case. The Court will therefore provisionally deny the Defendant Mr. Myzak's Motion for Summary Judgment as to the IIED claims. The Plaintiffs shall file with the Court and serve on the Defendants, on or before January 27, 2015, a specific proffer of the factual and properly-disclosed expert testimony that they will advance at trial as to the IIED claims. The Court will then conclusively resolve the Defendant Mr. Myzak's Motion for Summary Judgment in these regards at the pretrial conference.

### C.  **Negligence**

While Plaintiffs contest Defendants' Motion for Partial Summary Judgment with regard to the PHRA and intentional infliction of emotional distress claims, they concede that Defendants' Motion should be granted at least with regard to their negligence claims. *See* Plaintiffs' Opposition, ECF No. 98, at 2 n.4 ("Plaintiffs make no argument with respect to their negligence claims."). The Court confirmed Plaintiffs' lack of opposition to a grant of summary judgment on the negligence claims during oral argument on December 22, 2014. Therefore, Mr.

Myzak's Motion for Summary Judgment with regard to those negligence claims is granted by consent of the parties.

## II. CONSOLIDATION FOR TRIAL

Federal Rule of Civil Procedure 42(a) gives district courts "broad power to consolidate cases that share common questions of law or fact." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 212 (3d Cir. 2014) (internal quotation marks and alterations omitted). Determinations as to consolidation may be made either at a party's request or on a court's own initiative,[7] so long as the decision "may facilitate the administration of justice." *Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964). When determining whether consolidation is appropriate, the essential task is to balance "the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice" that could result. *Oliver v. Dow*, No. 10-1542, 2012 WL 1883921, at *3 (D.N.J. May 22, 2012) (internal quotation marks omitted).

The Defendants point out that all discovery in this case has been taken in common, that both Plaintiffs have been present for much of it, that when they have both been present they have huddled with Plaintiffs' counsel in common and at the same time, that to date there has been no situation in which the Plaintiffs have had to be separated one from the other, and that this whole case has its genesis in highly similar if not common allegations about the same type of conduct by the same person (Mr. Myzak) involving principally the same workplace settings.

The Plaintiffs on the other hand say that these cases have to be tried separately to avoid the risk that a single jury would be confused by the issues or in its deliberative tasks, that there is

---

[7] In this instance, the question arose first at Defendants' request, No. 13-452, ECF No. 12, and then through the Court's own initiative after the completion of fact discovery, No. 13-452, Text Order dated November 6, 2014, as amended by Text Order dated November 25, 2014.

12

a likelihood of improper melding of damages issues by a single jury, there are a lot of personal emails and other communications about one Plaintiff that the jury could (inappropriately, they say) consider in regard to the other, and there would be a potential conflict of interest in Plaintiffs' counsel representing both Plaintiffs in one trial since he "may" call Ms. Pifer to testify as to her response to complaints raised by Ms. Houpt, which would point out that Ms. Pifer was Ms. Houpt's immediate supervisor (or so she pleads in her Complaint at ¶16). Plaintiffs say that this would pit one Plaintiff against the other.

The Court previously consolidated these actions "for all pretrial and discovery matters" only. No. 13-559, ECF No. 13.[8] The Court then requested that counsel brief whether the cases should also be consolidated for trial. No. 13-452, Text Order dated November 6, 2014, as amended by Text Order dated November 25, 2014. Having reviewed the parties' briefs, and with the benefit of having heard argument on the issue on December 22, 2014, the Court concludes that the cases should also be consolidated for trial for the reasons that follow.

As a threshold matter, these cases contain many "common questions of law or fact." *SmithKline Beecham Corp.*, 769 F.3d at 212. Although some allegations of specific instances of alleged sexual harassment occurred at different times and places, both Plaintiffs allege claims against the same Defendants originating within a relatively short period of time in pretty much the same locales and in highly similar circumstances. Mr. Myzak is at the hub of all of them. ECF Nos. 24; 26. Both Plaintiffs allege that Mr. Myzak engaged in vigorous and serial inappropriate and unwelcome touching, verbal comments, and all sorts of other sexually-oriented workplace misbehavior, and that he generated an unwelcome and sexually-charged workplace climate that was so horrific that they had no choice but to quit their jobs, which is the basis for

---

[8] *See also* No. 13-452, Text Order dated June 11, 2013.

the application of common points of law pertaining to whether there was a hostile work environment. ECF Nos. 24, at ¶¶ 23-24, 26, 28, 33-34, 38-39; 26, at ¶¶ 20-21, 23, 26, 28-30, 36. Moreover, the parties have both represented that many if not most witnesses will be the same in both cases,[9] much of the evidence will overlap, and the same counsel will be present on both sides for both trials.

Consolidation does not require a perfect and absolute convergence of facts, as Plaintiffs implicitly contend. Without a doubt, consolidation would further interests in judicial economy, reduce costs for both sides, ensure that witnesses do not need to testify to the same events twice (or more), and would shorten the overall length of time spent by the Court and counsel (not to mention the service of two rather than one civil juries) during a trial. *See Oliver*, 2012 WL 1883921, at *3 (outlining each of these as valid concerns). Furthermore, factors which could at times counsel against consolidation are not present to an extent so as to tip the scales against consolidation. Those factors include, among others, the potential for juror confusion with regard to the issues and the possibility of prejudice to either party resulting from consolidation. *Id.* However, in these circumstances the Court has full confidence in a jury's ability to separate out any claims that differ between the two Plaintiffs, aided as they will be by the Court's focused instructions and verdict form in that regard[10]. Additionally, any potential prejudice to Plaintiffs as a result of consolidation and stemming from the potential conflict that Plaintiffs have alluded to is significantly minimized or eliminated by defense counsel's stipulation that she does not intend to raise any defense relating to one Plaintiff's alleged supervisory status with regard to the

---

[9] Notably, both counsel agree that each Plaintiff would likely (certainly) testify in the other's trial.

[10] As is the norm in this Court, the parties get the first crack at preparing those documents for the Court's consideration. As the Court noted at argument on this issue, day in and day out in courtrooms all across the Nation, juries are confidently entrusted with keeping separate matters separate in multi-defendant criminal trials. If juries can handle such challenges when fundamental liberty interests are at stake, a single jury would be up to the task here.

other. The Court therefore concludes that factors counseling against consolidation do not outweigh those in its favor. In fact, by those measures, the Court does not consider it to be a close call.

Numerous courts have ruled that consolidation is appropriate in circumstances similar to those presented in these actions. *See, e.g., E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998) (affirming consolidation in an employment discrimination case when, *inter alia*, both plaintiffs" sought to present similar evidence about a climate of racial hostility); *Caronia v. Hustedt Chevrolet*, No. 05-3526, 2009 WL 5216940, at *4 (E.D.N.Y. Dec. 29, 2009) (finding consolidation appropriate when the cases contained allegations against the same defendant, occurred "in the same general time frame," and would likely involve "testimony concerning the nature of the workplace environment as a whole [,which] will necessarily involve the same witnesses and many of the same incidents in each of these four cases"); *cf. Alaniz v. Zamora-Quezada*, 591 F.3d 761, 773–74 (5th Cir. 2009) (reviewing Rule 42(b) motion and affirming decision to try sexual harassment cases together when the specific evidence differed but all "claims are based on a similar series of transactions that were committed by the same defendant over a relatively short time span"). The Court is especially confident that these cases can be successfully tried together when no issues have arisen from consolidation for pretrial and discovery purposes with common counsel. None have been brought to the Court's attention, and each and every proceeding in this case has been conducted as to both Plaintiffs with the same lawyer, with no concerns being raised about doing any of those things in that way.[11]

While Plaintiffs point to the possibility that Plaintiffs might call Ms. Pifer to testify about what she did or did not do when Ms. Houpt complained about workplace issues, Plaintiffs have

---

[11] This includes multiple proceedings implicating the provisions of Fed. R. Evid. 412 and all of the highly sensitive matters contemplated by that Rule.

15

not pointed to an *actual* conflict between their interests, and, as to that potential testimony, the Plaintiffs' brief is notably silent as to whether or how Ms. Pifer's testimony on such matters would *actually* conflict with the interests of Ms. Houpt. *See* ECF No. 111 at 6. All it says is that Ms. Houpt might make that inquiry of Ms. Pifer. She never says that Ms. Pifer will testify against Ms. Houpt's interests[12]. In short, other than saying the words, there is nothing in the record that demonstrates that a conflict actually exists. Whatever potential for a conflict may or may not have existed at the inception of these cases, there has not been any record evidence advanced that such an actual conflict now exists, or would at trial.

On top of that, if such an actual conflict exists through dual representation at trial under Pa. R. Prof. Conduct 1.7, it has existed all along[13] and would exist to this very day, requiring Plaintiffs' counsel to withdraw from the cases entirely, since if there really is a conflict of Plaintiffs' interests, he may not pit one Plaintiff against the other whether in one trial or in two. Yet on top of that is the stipulation of defense counsel that the Defendants do not plan to use Ms. Pifer's alleged supervisory status as a defense during trial[14]. For these and the reasons previously stated by the Court, and in furtherance of the "just, speedy and inexpensive"

---

[12] Presumably, Plaintiffs' counsel knows what Ms. Pifer's testimony would be in any such regards, both from his representation of her, and from her oral deposition. For all that anyone else knows (or will find out at trial), Ms. Pifer's testimony in any such regards is supportive of both of their cases, or at least not at all detrimental to either Plaintiff, and Plaintiffs have not advised the Court as to how it might be otherwise. While a "potential" issue could well exist at the earliest stages of this case when the Court was first asked to consider this issue, we are now at a very different place, with an extensive discovery and pretrial motions record available to the parties and to the Court.

[13] At argument on this Motion, Plaintiffs' counsel forthrightly conceded that there is no documentation between him and either of his clients outlining the nature and scope of any such conflict and obtaining the knowing and informed waiver of it from both Plaintiffs. *See* Pa. R. Prof. Conduct 1.7. If the interests of Ms. Pifer and Ms. Houpt are in actual conflict because of what Ms. Pifer did or did not do as an "immediate supervisor" of Ms. Houpt, that has been a conflict from Day One, and having two trials instead of one does not cure it.

[14] And the Court will hold the Defendants to that stipulation at trial, unless Plaintiffs somehow open the door to the topic.

determination of these actions, Fed. R. Civ. P. 1, the Court will consolidate these two actions for trial.

**III. <u>CONCLUSION</u>**

For the reasons stated in this Opinion, the Court will order as follows:

1) Defendants' Motion for Summary Judgment as to claims of both Plaintiffs' claims under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*, is denied;

2) Defendants' Motion for Summary Judgment as to the claims of both Plaintiffs for intentional infliction of emotional distress is provisionally denied without prejudice. The Plaintiffs shall proffer in writing and on the record the evidence of physical injury required by Pennsylvania law for the maintenance of such a claim not later than January 27, 2015, as set forth above;

3) Defendants' Motion for Summary Judgment as to the negligence claims of both Plaintiffs is granted based on the stipulation by the parties in open Court on December 22, 2014;

Furthermore, for the reasons stated in this Opinion, the Court Civil Action Nos. 13-452 and 13-559 will be consolidated for trial.

Mark R. Hornak
United States District Judge

Dated: January 22, 2015
cc: All counsel of record

17